SCREENLAND MAGAZINE, INC., Plaintiff, *v.* NATIONAL CITY BANK OF NEW YORK, Defendant.

Supreme Court, Trial Term, New York County, May 11, 1943.

*Burns, Currie* and *Walker* for plaintiff.

*Shearman & Sterling* for defendant.

SHIENTAG, J. This is an action by the plaintiff, a depositor, to recover $35,600.18 paid out by its bank, the defendant, upon ninety-five forged checks of the plaintiff, and charged to the plaintiff's bank account. These ninety-five checks, with three exceptions, were payable to the order of Joshua Superior, the plaintiff's treasurer and office manager.

Under a corporate resolution adopted by the plaintiff and filed with the bank, it was required that checks, to be valid, had to be signed by any two of certain designated officers and employees. Each of the forged checks bears the genuine signature of Joshua Superior and the forged signature of J. S. MacDermott, plaintiff's vice-president. Superior forged Mac-Dermott's signature. The checks in question were paid by the bank between July 1, 1937, and July 26, 1938, and each of them was returned by the bank to the plaintiff with a statement of the account on the first day of the month following payment. During the year prior to June 1, 1937, forty-three similar checks, payable to Joshua Superior and similarly forged, were also paid by the bank and in each case the canceled voucher was returned to the plaintiff. Suit on this batch of forty-three checks was barred by the Statute of Limitations. The plaintiff did not discover or report the forgeries to the bank until July 26, 1938.

The bank concedes the forgeries but urges as a defense to this action that the plaintiff, its depositor, was negligent in failing to detect and report the forgeries on checks prior to any of those in suit. The depositor, in substance, contends that it was not negligent, prior to September, 1937, in the

performance of any duty it owed to the bank, and that in any event the bank remains liable on the ninety-five forged checks involved in this suit because the bank itself was negligent in making payment thereon.

My conclusions are as follows:

1. Generally speaking, a bank, to the extent that it pays a check bearing the forged signature of its depositor, pays out of its own fund and cannot charge the forged check to the depositor's account (*Weisser* v. *Denison*, 10 N. Y. 68, 82). "Banks are bound to know the signatures of their customers, and they pay checks purporting to be drawn by them at their peril. If the bank pays forged checks, it commits the first fault." (*Frank* v. *Chemical National Bank*, 84 N. Y. 209, 214; see, also, *Takenaka* v. *Bankers Trust Co.*, 132 Misc. 322, affd. without opinion 225 App. Div. 860, appeal dismissed 251 N. Y. 521.)

2. The bank is relieved from this strict liability where its payment of forged checks is caused by the negligence of its depositor, that is, by the violation of the duty owed by the depositor to the bank and where no carelessness on the part of the bank itself was responsible for the payment of the forged checks.

3. A depositor violates the duty he owes to his bank when he neglects "to do those things dictated by ordinary business customs and prudence and fair dealing toward the bank which, if done would have prevented the wrongdoing which resulted from their omission." (*Morgan* v. *U. S. Mtge. & Trust Co.*, 208 N. Y. 218.)

4. A depositor is under a duty to his bank to examine canceled checks and statements received from the bank and to notify the bank promptly of any irregularities in the account. If a depositor disregards this duty, any further losses occurring as a result of such omission must be borne by the depositor unless the bank itself is guilty of contributory negligence. (*Critten* v. *Chemical National Bank*, 171 N. Y. 219; *Morgan* v. *United States Mtge. & Trust Co.*, 208 N. Y. 218, *supra;* *Stumpp* v. *Bank of New York*, 212 App. Div. 608; *Ford, Bacon & Davis, Inc.* v. *Irving Trust Co.*, Sup. Ct. N. Y. County, N. Y. L. J. May 18, 1934, p. 2423, affd. without opinion, 242 App. Div. 821, leave to appeal denied, 266 N. Y. liv.)

5. Although as a general rule it is the duty of a depositor to compare the returned check vouchers with the check stubs, the check stubs are not always regarded as the only acceptable standard of comparison. The depositor may use, for purposes of verification and reconciliation, any accurate record book

kept by him in the regular course of business. (*Critten* v. *Chemical National Bank,* 171 N. Y. 219, *supra; Takenaka* v. *Bankers Trust Co.,* 132 Misc. 322, affd., *supra.*)

6. The duty of verification and of reconcilement may be delegated to any employee who has proved himself competent and trustworthy. (*Takenaka* v. *Bankers Trust Co., supra.*)

7. A depositor cannot be charged with the knowledge which the dishonest employee had gained while he was stealing from him (*Potts & Co.* v. *Lafayette National Bank,* 269 N. Y. 181, 187), but a " depositor must be held chargeable with knowledge of all the facts that a reasonable and prudent examination of the returned bank statements, vouchers and certificates would have disclosed had it been made by a person on the depositor's behalf who had not participated in the forgeries." (*Ford, Bacon & Davis, Inc.* v. *Irving Trust Co.,* Sup. Ct. N. Y. County, N. Y. L. J. May 18, 1934, p. 2423, affd., *supra.*)

8. The plaintiff concedes that after September, 1937, substantially the whole of the last year of the forgery period, it did not fulfill the duty it owed to its bank in that it failed after that time properly to reconcile its bank account. The first forged check sued on (not barred by the Statute of Limitations) is dated June 30, 1937. During the year prior thereto forty-three similar forged checks were also paid by the bank and charged to the depositor's account.

9. The evidence clearly establishes, however, that the plaintiff depositor was guilty of negligence, and of a breach of the duty it owed to its bank, prior to September, 1937. As early as April, 1937, all semblance of regularity in the making of check stub entries disappeared. Upon the receipt of the April, 1937, and the subsequent monthly bank statements and returned vouchers, a reasonable and honest examination and comparison would have disclosed the forgeries or would have unveiled the irregularities, leading inevitably to such a disclosure. Even if the plaintiff had compared the returned vouchers with the cash book instead of the check stubs, a prudent and honest comparison would have disclosed the forgeries as early as June, 1937. We have here forgeries recurring from month to month in a long series and the depositor's negligence as to the earlier forgeries made possible the later ones.

10. The defendant bank was not guilty of any negligence in failing to detect the forgeries. A corporate resolution of the depositor, on file at the bank, authorized the payment of checks to officers of the plaintiff. Many of the forged checks were cashed at the bank by an employee of the plaintiff, known to

be such by the bank. The bank received from the plaintiff depositor twenty-one reconcilement statements upon plaintiff's account. These reconcilement statements, according to the bank's practice at that time, were sent out each month with the monthly bank statement and returned vouchers. The bank's printed form required the depositor to fill in the amount of the deposit balance according to the depositor's books on the date of the statement and to note any exceptions taken to the bank's statement or to any of the returned vouchers. The form contained a statement: "The canceled vouchers returned have been examined and found to be complete and correct as listed on the statements accompanying them." Each of those reconcilement statements purported to be signed on behalf of the plaintiff by Joshua Superior and J. S. MacDermott. The testimony shows that all MacDermott signatures on the reconcilements were genuine with the exception of the last three.

11. A careful examination of the forged signatures and a comparison between them and admittedly genuine signatures of Mr. MacDermott lead me to the conclusion that the forgeries were good imitations. The uncontradicted testimony of the handwriting expert called by the bank was also to the effect that the forgeries were good imitations of the genuine signature. There is a big difference between examining signatures singly, or two or three at a time, and having all of the checks spread out before you at one time, for purposes of study and comparison. As the handwriting expert testified, the problem of detecting forgeries becomes much simpler as soon as groups of valid and questioned signatures are examined at the same time. The forgeries were not tracings of the genuine signature. They varied among themselves as Mr. MacDermott's genuine signatures varied.

As I examine these forged signatures, I find that the striking characteristics of Mr. MacDermott's signature have been cleverly imitated. It is true that the forger did not do so well with the letters " ott " in the MacDermott signature, but taking the signature as a whole, the forgery was not a clumsy one but was skillfully perpetrated.

12. These checks were handled in accordance with the bank's regular practice. Each of the forged checks at the time of payment was examined as to signature and passed on either by a paying teller, with respect to those checks which were cashed at the bank window, or by a signature control man as to those checks presented through the exchanges. The signatures were passed on by various experienced and trusted bank employees

(eleven in all) and the bank paid the checks in good faith, believing them to be genuine. There was nothing on the face of the checks themselves to arouse suspicion.

It undoubtedly is true that almost every forgery, no matter how cleverly done, can be detected if it is subjected to an examination sufficiently minute, painstaking and expert. The demands of modern business and banking, however, prevent a bank from making any such detailed, highly expert examination. Tellers and signature men cannot be held to the degree of expertness of a handwriting expert. It is by no means uncommon for handwriting experts themselves to differ concerning the authenticity of signatures. The law applies the rule of reason in dealing with a situation such as is here presented. The bank starts with the burden of strict liability. In the first instance it is virtually the insurer of the validity of its depositor's signature. That strict liability is modified when it appears that the depositor himself has been guilty of a breach of duty owed to the bank, when because of the carelessness or fault of the depositor a long continued repetition of the forgeries is made possible. When the depositor is so at fault, the liability of the bank ceases to be that of an insurer; it becomes liable to the negligent depositor only if the bank itself has also been negligent in failing to detect the forgery. The strict liability imposed by the law in the first instance is then transformed into an obligation on the part of the bank to use reasonable care — that degree of prudence which could reasonably be expected of a bank. The evidence shows that the depositor was clearly at fault; it fails to show any negligence on the part of the bank.

Judgment is accordingly directed in favor of the defendant, with costs. Settle judgment in accordance with the foregoing.