**PHOENIX ASSURANCE COMPANY OF NEW YORK, a Corporation**

v.

**FIRST BANK AND TRUST COMPANY, a Corporation, Appellant.**

**No. 15574.**

United States Court of Appeals
Third Circuit.

Argued March 22, 1966.

Decided May 27, 1966.

Murray Greiman, Jersey City, N. J. (Lifland & Greiman, I. Charles Lifland, Jersey City, N. J., of counsel, on the brief), for appellant.

Louis Auerbacher, Jr., Newark, N. J., for appellee.

692

Before KALODNER, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The plaintiff, Phoenix Assurance Co., insured Amboy Manufacturing Co. against loss "the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of" its employees. Beginning January 9, 1959 and intermittently until March 17, 1961, Grace Diller, employed by Amboy as a bookkeeper and payroll clerk in its New Jersey office, defrauded her employer in the following manner. First, she would add to a weekly payroll the names of employees or former employees who had not worked during the pay period covered by the payroll. She would then transmit the padded payroll to appropriate Amboy officers who drew checks upon Amboy's account in the defendant bank, payable to all employees listed on the payroll. These checks were signed in Amboy's New York office and returned to the New Jersey office for distribution. Diller then would take those checks which were payable to persons whose names she had wrongfully added to the payroll, forge the endorsements of the payees, add her own endorsement and cash the checks at the defendant bank. Since it was Diller's custom to cash many proper checks upon request as an accommodation to fellow employees, she usually endorsed and presented proper checks to the bank for cashing along with those on which she had forged endorsements. This scheme of payroll padding and endorsement forging was repeated for many weekly payrolls over a period of more than two years, with the result that the bank cashed some 254 checks upon which Diller had forged the payees' endorsements.

Amboy did not discover this wrongdoing until March, 1961, at which time it notified the defendant. The defendant had charged the amounts of the checks in question against Amboy's account and did not change or remove these charges when notified of the forgeries. With the matter in this posture, the plaintiff, as Amboy's insurer, paid Amboy $11,659.64, the amount of its loss, and then, as assignee of Amboy rights, brought this action against the defendant.

The district court granted summary judgment for the bank upon the theory that, with reference to the loss in suit, the bank as well as Amboy was an insured under the terms of Amboy's policy and, as such, could not be required to reimburse the insurer.

On appeal, this court reversed the judgment and remanded the cause for trial or other appropriate proceedings. 1963, 316 F.2d 530. It was and is our view that on the record the defendant was not a "bank which is included in the Insured's proof of loss" as that language was used in Amboy's insurance policy to specify the circumstances in which Amboy's bank would also be covered by the policy.

After remand the case was tried to the district court sitting without a jury. The court properly construed our opinion as preventing the bank from defending successfully upon any theory that it was covered by the terms of the policy. However, the bank also contended, unsuccessfully before the trial court, that the loss resulted from the negligence of Amboy in not promptly discovering the long continued payroll padding, with the result that neither Amboy nor the plaintiff, now asserting Amboy's right by way of assignment or subrogation, can recover from the defendant for debiting Amboy's account with amounts it paid on Amboy's otherwise valid checks which bore forged endorsements.

The relevant transactions in this case occurred in New Jersey. A New Jersey statute concerning payments by banks on forged endorsements reads as follows:

"C. No banking institution shall be liable to a depositor for an amount charged to or collected from him because of the payment by the banking institution of a check, note, acceptance or other instrument for the payment of money upon which the signature of

any party was forged, or which was raised or otherwise materially altered, if the banking institution shall establish

"(1) that the depositor failed to exercise due diligence in discovering, and giving notice to the banking institution that an amount was charged to or collected from him because of the payment by the banking institution of any such clerk, [sic] note, acceptance or other instrument for the payment of money; and

"(2) that such lack of diligence contributed to the payment by the banking institution of an amount so charged to or collected from the depositor for the recovery of which the depositor seeks to hold the banking institution liable." N.J.S.A. 17:9A–226, subd. C, repealed and superseded by the Uniform Commercial Code, L.1961, c. 120, N.J.S.A. 12A:1–101, effective Jan. 1, 1963, after the events relevant to this case.

It was the view and holding of the trial court that Amboy could not reasonably be required to know the signatures of its numerous employees or to check purported employee endorsements on its canceled pay checks against its records.

We think this analysis was incomplete because it did not take into consideration another aspect of Amboy's alleged negligence. The weekly Amboy payrolls were prepared upon the basis of the individual time cards of the employees. There were no time cards for those persons whose names Diller wrongfully added to the payrolls. Amboy had established no practice of or procedure for checking payrolls, as made up by Diller, against the time cards upon which they should have been based. The Amboy comptroller testified that occasionally the plant manager "would look at the payroll, see that the prices [pay rates?] were right". Beyond that there was no verification of the payrolls as prepared by Diller, a $55. per week clerk. Neither was there any subsequent audit covering the correlation between payrolls and time cards. It was only when the plant manager happened to see checks in Diller's desk payable to employees whom he knew were not working that the matter was investigated and the long continued wrongdoing discovered. We think this undisputed testimony of responsible Amboy officials leaves no room for rational avoidance of the conclusion that even minimal supervisory or auditing procedures would have disclosed the payroll padding, thus leading to discovery of the forged endorsements soon after Diller embarked upon her fraudulent scheme.

Because of a two year period of limitations, N.J.S.A. 17:9A–226(B), recovery in this case was limited to checks returned to Amboy after June 1959. Admittedly, the first checks with forged endorsements were cashed in January, 1959. We find it too clear for reasonable men to differ that the exercise of due care by Amboy would have disclosed and stopped the forgeries at some time during the first few months of 1959. Accordingly, all of the payments on forged endorsements covered by the present judgment would have been avoided if Amboy had exercised reasonable care in the administration of its payrolls.

We are satisfied that, within the meaning of the New Jersey statute, the depositor Amboy "failed to exercise due diligence in discovering and giving the notice" of Diller's fraudulent course of conduct and that "such lack of diligence contributed to the payment by the banking institution" of the amount in suit here. Cf. Rainbow Inn, Inc. v. Clayton National Bank, 1964, 86 N.J.Super. 13, 205 A.2d 753. The Supreme Court of Tennessee has found that a depositor's claim is defeated by his own negligence on facts remarkably like those here. United States Guarantee Co. v. Hamilton National Bank, 1949, 189 Tenn. 143, 223 S.W.2d 519; Scott v. First National Bank in St. Louis, 1938, 343 Mo. 77, 119 S.W.2d 929; Union Trust Co. v. Soble, 1949, 192 Md. 427, 64 A.2d 744; Screenland Magazine, Inc. v. National City Bank, 1943, 181 Misc. 454, 42 N.Y.S.2d 286.

694

Finally, the defendant contends that upon reversal of the judgment of the district court it is entitled to its attorneys' fees. However, we think a bank, sued by a depositor or his assignee because of the established fact that the bank has charged its depositor's account with checks paid on forged endorsements, has no such standing in equity as to warrant imposing the bank's counsel fees on the plaintiff, even though the depositor's negligence has enabled the bank to avoid liability. Actually, the bank itself relied to an extent on Diller, since it cashed the checks for her on her endorsement, without any other assurance that the purported payee endorsements preceding hers were genuine. The bank argues that as an "indemnitee" its relationship to the plaintiff insurer is such as to justify an award of counsel fees. However, we have already concluded that, as concerns the present loss, the bank was not a party to or a beneficiary under the insurance policy.

The judgment will be reversed, without any award of counsel fees to the appellant.