Burke, J.
 

 Faye Zappacosta was employed as a bookkeeper by plaintiff Arrow Builders Supply Corp. Each month, she drew checks for plaintiff’s president LaSala on its account in defendant Royal National Bank, payable to the order of that bank, representing income and social security taxes withheld from the wages of Arrow’s employees. Between August, 1962 and June, 1964 Zappacosta drew and LaSala purportedly signed 54 such checks, of which only 23 were properly applied. The 31 .remaining checks, totaling $132,000-, were presented individually by Zappacosta to the bank whereupon the bank would issue its own check for the same amount payable to a person designated by Zappacosta. In most cases the payee she selected was either a friend or a relative who would either indorse over the the check to her or cash it and deliver the proceeds.
 

 In furtherance of her scheme, she concealed these unlawful withdrawals, as best she could. As bookkeeper, she was the one who first checked the cancelled vouchers and examined these bank statements. Before submitting a statement and the accom
 
 *431
 
 partying checks to plaintiff’s accountant, she would withdraw the checks involved, write void on their corresponding checkbook stubs and then prepare a tape which, while excluding the amounts of any checks appropriated by her, nevertheless reflected the proper total for all the checks drawn for that month. Thus, the total shown always exceeded the sum of the enumerated checks. The statement, with this tape, was then presented to the accountant who neither compared the checks he received against the debits on the statement, nor totalled these checks himself. Consequently, Zappacosta was able to perpetuate this scheme for 23 months whereas a proper review of the first statement would have exposed the first defalcation. Plaintiff brought this suit to recover the entire sum taken by its bookkeeper Zappacosta, alleging that the defendant bank paid these funds without making any appropriate inquiry as to her authority to direct the application of these checks. Defendant, conceding its carelessness, asserts as an affirmative defense plaintiff’s negligence in failing to discover the embezzlement. After defendant had been given an opportunity of availing itself of the disclosure procedures, plaintiff successfully moved for summary judgment. That order, subsequently affirmed, can only be sustained where it clearly appears that no material and triable issue of fact is presented.
 
 (Sillman
 
 v.
 
 Twentieth Century-Fox Film Corp.,
 
 3 N Y 2d 395, 404.) It is our opinion that, upon this record, a triable issue is presented at least as to plaintiff’s negligence in failing to discover these defalcations.
 

 At the outset, it should be noted that the defendant was negligent in disbursing plaintiff’s money without receiving proper instructions and without having made any inquiry.
 
 (Matteawan Mfg. Co.
 
 v.
 
 Chemical Bank & Trust Co.,
 
 244 App. Div. 404, 412-413, mod. 272 N. Y. 411;
 
 Shipman
 
 v.
 
 Bank of State of New York,
 
 126 N. Y. 318, 326-327.) In receiving checks payable to itself, and signed by the plaintiff’s president, the bank properly presumed that these checks had commercial significance. In such a situation, the bank cannot properly ascertain this significance by merely relying on the directions of one who is without either actual or apparent authority to represent the drawer.
 
 (Matteawan Mfg. Co.
 
 v.
 
 Chemical Bank & Trust Co., supra; Fidelity & Cas. Co.
 
 v.
 
 Hellenic Bank Trust Co.,
 
 181 Misc. 40, 43.) Accordingly, if this encompassed all the transactions
 
 *432
 
 between the parties, summary judgment for the drawer would indeed be proper.
 

 A second pattern of activity existed between these parties, however, which also requires evaluation. After the bank began to supply these checks under the advisement of Zappacosta, it continued to supply the plaintiff with monthly statements reflecting all the transactions for this account. Thus, during the 23-month period involved, at least two checks were returned each month, each purportedly issued by the plaintiff to cover its monthly payment for income and social security taxes withheld from the wages of its employees. Indeed, in some months, plaintiff received as many as four cancelled checks, each allegedly drawn to cover this single monthly payment. The issuance of such a statement is not without purpose. Bather, it is intended to inform the plaintiff of the status of his account and to provide him with an opportunity to notify the bank of any discrepancies existing between the statement as presented and the balance as maintained by the drawer. In this regard, the duties of the depositor have been often enumerated in unequivocal terms. Justice Shientag’s opinion in
 
 Screenland Mag.
 
 v.
 
 National City Bank
 
 (181 Misc. 454) is illustrative. There, it was noted that,
 
 inter alia:
 

 “
 
 A depositor is under a duty to his bank to examine canceled checks and statements received from the bank and to notify the bank promptly of any irregularities in the account. If a depositor disregards this duty, any further losses occurring as a result of such omission must be borne by the depositor unless the bank itself is guilty of contributory negligence * * *
 

 ‘‘ The duty of verification and of reconcilement may be delegated to any employee who has proved himself competent and trustworthy * * * A depositor cannot be charged with the knowledge which the dishonest employee had gained while he was stealing from him
 
 (Potts & Co.
 
 v.
 
 Lafayette National
 
 Bank, 269 N. Y. 181, 187), but a ‘ depositor must be held chargeable with knowledge of all the facts that a reasonable and prudent examination of the returned bank statements, vouchers and certificates would have disclosed had it been made by a person on the depositor’s behalf who had not participated in the forgeries '
 
 (id.,
 
 pp. 457-458). (See, also, 5 N. Y. Jur., Banks and
 
 *433
 
 Trust Companies, §§ 311-314; §§ 434-439, and cases cited therein.)
 

 These rules, which have evolved basically with reference to forged signatures, are also applicable where the plaintiff’s negligence may have made the embezzlement possible.
 
 (Potts & Co.
 
 v.
 
 Lafayette Nat. Bank,
 
 269 N. Y. 181.) Applying these standards to the instant case, it is apparent that there are questions of fact as to whether the depositor used due care in the examination of these statements and vouchers. Thus, the depositor will be precluded from recovering from the bank, if the jury should find that the bank was damaged by the drawer’s negligence in failing to properly examine the monthly statements.
 

 The bank, of course, is liable in the amount of $5,237.55, which was improperly charged co plaintiff’s account upon presentment of the first check. Summary judgment was, therefore, properly granted as to that check.
 

 Accordingly, the order appealed from should be modified, with costs to abide the event, to the extent of reversing the grant of summary judgment, except as to the first check in the amount of $5,237.55, and, as so modified, affirmed.
 

 Chief Judge Fuld and Judges Scileppi, Bergan, Breitel and Jasen concur; Judge Keating taking no part.
 

 Order modified, with costs to abide the event, by reversing the grant of summary judgment, except as to the first check in the amount of $5,237.55, and, as so modified, affirmed, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.