169 N.J. Super. 272 (1979)
404 A.2d 1178
WESTERN UNION TELEGRAPH COMPANY, A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT,
v.
PEOPLES NATIONAL BANK IN LAKEWOOD, A BANKING ASSOCIATION DULY ORGANIZED UNDER THE LAWS OF THE UNITED STATES OF AMERICA, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT,
v.
KATHERINE PLOMATOES AND CHRISTINE LESTER, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1978.
Decided June 20, 1979.
*273 Before Judges ALLCORN, SEIDMAN and BOTTER.
Mr. Peter R. Strohm argued the cause for appellant (Messrs. Rothstein, Mandell & Strohm, attorneys).
*274 Mr. John A. Covino argued the cause for respondent (Messrs. Patterson & Abrams, attorneys; Mr. Robert A. Abrams, on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
Defendant Peoples National Bank in Lakewood (Peoples) appeals from a judgment against it for $1,100 plus interest in favor of plaintiff Western Union Telegraph Company, in an action based upon Peoples' mistake in cashing a Western Union money order in an amount corresponding to its numerals, $1,200, rather than its words reading "one hundred dollars." Ultimately, Western Union's drawee bank charged Western Union's account $1,200, and that sum was paid to Peoples. The principal issue is whether in these circumstances Western Union can sue Peoples directly or is limited to its claim against its drawee. This issue has not been decided previously in this State, and no reported case on this precise issue has been found in any sister state.
The facts presented in the scant record are simple and undisputed. On November 15, 1974 a Western Union telegraphic money order was sent by someone named Anthony Palma of Rockville, Connecticut, to Katherine Plomatoes of Brick Town, New Jersey, payable to her order. The money order was signed and issued by Christine Lester, Western Union's agent at its Lakewood, New Jersey, office. It was drawn on The Chase Manhattan Bank, N.A., of New York City.
Plainly, the money order called for the payment of "ONE HUNDRED.... .... . . 00/100 DOLLARS," stated in words, but also "$1200.00," stated in numerals. Since words in an instrument "control figures," except when the words are ambiguous, N.J.S.A. 12A:3-118(c), only $100 should have been paid to a holder of the instrument. Instead on November 15, 1974, when presented with endorsements in the names of Katherine Plomatoes and, curiously, plaintiff's *275 agent Christine Lester, Peoples' teller paid the holder (allegedly Katherine Plomatoes or Christine Lester) $1,200. Peoples received $1,200, presumably through normal collection channels, and Western Union asserts that it ultimately "paid" the money order in the amount of $1,200. For the purposes of this opinion we assume that the instrument or item, N.J.S.A. 12A:4-104(1)(g), passed through the normal collection process whereby defendant received $1,200 from the drawee, Chase Manhattan, who, in turn, charged plaintiff's account in the same amount. See N.J.S.A. 12A:4-204; Life Ins. Co. of Va. v. Snyder, 141 N.J. Super. 539 (Cty. D. Ct. 1976); Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co., 345 Mass. 1, 184 N.E.2d 358 (Sup. Jud. Ct. 1962); Allied Concord Financial Corp. v. Bank of America Nat'l Trust & Savings Ass'n, 275 Cal. App.2d 1, 80 Cal. Rptr. 622 (D. Ct. App. 1969); Rosenthal, "Negotiability  Who Needs It?" 71 Colum. L. Rev. 375, n. 61 at 390 (1971).
More than two years later, by letter dated December 2, 1976, Western Union demanded reimbursement from Peoples of its $1,100 loss. Peoples rejected the claim and this action was commenced. Peoples then filed a third-party complaint against Plomatoes and Lester but could not locate or serve them.
Both parties moved for summary judgment. We were advised that the trial judge treated the case as if it had been tried on stipulated facts. Finding Peoples negligent, see N.J.S.A. 12A:4-103(1), in cashing the money order in violation of N.J.S.A. 12A:3-118(c), he entered judgment in favor of plaintiff. The trial judge rejected Peoples' contention that Chase Manhattan's negligence in charging $1,200 against Western Union's account precluded Western Union's recovery against Peoples. He reasoned that it was Peoples' negligence "which resulted in" the $1,100 damage to Western Union. Since we find no express provision in the Uniform Commercial Code which controls the result, we *276 base our conclusions on general legal principles, N.J.S.A. 12A:1-103, and we reverse.
Peoples reminds us that it was the negligence or misconduct of Western Union's own agent in issuing an instrument with conflicting words and figures that set into motion the errors that were later committed. Nevertheless, our disposition of this case makes it unnecessary for us to determine if plaintiff should be precluded on that count alone. Cf. N.J.S.A. 12A:3-406, which bars recovery by one whose negligence substantially contributes to a material alteration of an instrument or the making of an unauthorized signature as against a drawee, providing the drawee acts in good faith "in accordance with the reasonable commercial standards" of its business. See Transamerica Ins. Co. v. United States Nat'l Bank of Oregon, 276 Or. 945, 558 P.2d 328 (Sup. Ct. 1976); Bank of S. Md. v. Robertson's Crab House, Inc., 39 Md. App. 707, 389 A.2d 388 (Ct. Spec. App. 1978). We will determine the outcome of this case on the assumption that Peoples and Chase Manhattan were negligent in paying out more than $100 on the instrument without regard to plaintiff's negligence.
It does not follow, however, that Peoples' negligence was the "proximate cause" of plaintiff's loss. N.J.S.A. 12A:1-103 provides that "principles of law and equity" supplement the provisions of the Code unless displaced by particular provisions. See Salsman v. National Community Bank of Rutherford, 102 N.J. Super. 482, 492-494 (Law Div. 1968), aff'd per curiam 105 N.J. Super. 164 (App. Div. 1969). To the extent that plaintiff relies on negligence law as the source of defendant's obligation, plaintiff must establish a causal relationship between Peoples' conduct and its loss. See Hoke v. Pioneer State Bank, 167 N.J. Super. 410 (1979).
The direct cause of plaintiff's loss was Chase Manhattan's improper charging of plaintiff's account. Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co., supra, 345 Mass. at 11, 184 N.E.2d at 364; Allied Concord Financial *277 Corp. v. Bank of America Nat'l Trust & Savings Ass'n, supra, 275 Cal. App.2d at 5, 80 Cal. Rptr. at 625. Peoples had no direct dealing with plaintiff and breached no warranty on which plaintiff can rely. Cf. N.J.S.A. 12A:3-417; N.J.S.A. 12A:4-207; Life Ins. Co. of Va. v. Snyder, supra. Chase Manhattan, as drawee, was obliged to "properly" pay the item and was authorized to charge the proper amount against plaintiff's account. See N.J.S.A. 12A:4-401. When paid, the instrument was discharged, see N.J.S.A. 12A:4-213 and N.J.S.A. 12A:3-603; Anderson, Uniform Commercial Code (2d ed. 1971), § 4-213 at 264-276, and Chase Manhattan's act of payment gave no contractual rights to plaintiff as against Peoples. Peoples simply had paid out more of its own money than it should have when it cashed the money order. It had no right to expect Chase Manhattan to honor the item for more than $100. Thus, in traditional negligence terms, it may be said that the proximate cause of plaintiff's loss was Chase Manhattan's act of charging plaintiff's account, since Chase Manhattan had the duty to its customer and the "last clear chance" to read and pay the item properly. Cf. Latta v. Caulfield, 79 N.J. 128, 133-135 (1979); Pangborn v. Central R. Co. of N.J., 18 N.J. 84, 100-103 (1955); Whaley, "Negligence and Negotiable Instruments," 53 N. Car. L.R. 1, 17 (1974), referring to U.C.C. §§ 3-406 and 4-406 as "last clear chance" statutes, in effect. Moreover, there is nothing in the record to show that Peoples' conduct was a substantial factor in causing Chase Manhattan to act as it did. See 2 Restatement, Torts 2d, § 431 at 428 (1965); O'Brien v. Bethlehem Steel Corp., 59 N.J. 114, 124 (1971). We have been told nothing about the collection process and cannot surmise that the mechanics utilized in the process induced Chase Manhattan to rely on Peoples' conduct in paying the item.
The importation of proximate cause concepts from the field of torts into the law of negotiable instruments has been justly criticized. Whaley, "Negligence and Negotiable Instruments," supra, 53 N. Car. L.J. at 42. We ought to consider *278 why it may be desirable or undesirable in this banking transaction to allow plaintiff to sue Peoples directly for its negligence.
One reason offered in favor of a direct suit by the drawer against the depositary or collecting bank is the avoidance of circuity of action. Plaintiff could have sued Chase Manhattan, and Chase Manhattan, in turn, may have had a claim against Peoples on a contractual basis, see N.J.S.A. 12A:4-103, or otherwise for having received $1,200 for the $100 item. See the Allied Concord case, supra, where the drawer was treated as the third-party beneficiary of endorsement warranties given by depositary and collecting banks, and a direct suit was allowed. Contra, Life Ins. Co. of Va. v. Snyder, supra. But the policy against circuity of action ought not be the source of a cause of action that may otherwise be lacking. Here it is not clear that Peoples owed a duty to plaintiff or that Peoples' breach of that alleged duty "caused" plaintiff's loss. Moreover, Chase Manhattan may have defenses against Western Union and Peoples may have defenses against a claim by Chase Manhattan. If plaintiff had sued Chase Manhattan, recovery might have been barred by laches or other time limitations created by statute or agreement of the parties, and those issues should be decided first. See Life Ins. Co. of Va. v. Snyder and Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co., both supra.
A customer owes the duty to his bank to examine cancelled checks and statements received from the bank and to give timely notice of any irregularities. Arrow Builders Supply Corp. v. Royal Nat'l Bank of N.Y., 21 N.Y.2d 428, 431, 235 N.E.2d 756, 758, 288 N.Y.S.2d 609, 612 (Ct. App. 1968); Forbes v. First Camden Nat'l Bank & Trust Co., 25 N.J. Super. 17, 23 (App. Div. 1953). This duty has been recognized by statute, U.C.C. § 4-406(1); N.J.S.A. 12A:4-406(1); N.J.S.A. 17:9A-229.1 to 229.5; and time limitations for bringing suit may be imposed by statute, U.C.C. § 4-406(4); N.J.S.A. 12A:4-406(4); N.J.S.A. 17:9A-229.2 and 229.3; Duralite Co., Inc. v. New Jersey *279 Bank & Trust Co., 97 N.J. Super. 48 (App. Div. 1967); Billings v. East River Savings Bank, 33 A.D.2d 997, 307 N.Y.S.2d 606 (App. Div. 1970), or by agreement between the bank and its customer. See New York Credit Men's Adjustment Bureau, Inc. v. Manufacturers Hanover Trust Co., 41 A.D.2d 912, 343 N.Y.S.2d 538 (App. Div. 1973).
Thus, had plaintiff sued Chase Manhattan, plaintiff's claim may have been defeated. In that case Chase Manhattan would have suffered no loss and would have no claim against Peoples.
Denying plaintiff the right to sue Peoples directly produces a result which is consonant with the Uniform Commercial Code. U.C.C. § 4-406 (N.J.S.A. 12A:4-406) establishes rules affecting the liability of a bank to its customer for items paid in good faith and returned to the customer with a statement of account. Subsection (4) precludes a customer from asserting a claim if the customer has not discovered and reported an unauthorized signature or alteration within one year from the time the statement and item are received or within three years from that time if the claim is based upon an unauthorized endorsement. Subsection (5) provides that a payor bank that fails to assert a valid defense against the claim of a customer resulting from payment of an item governed by § 4-406 is barred from asserting a claim against any collecting bank or other prior party presenting the item. Thus, this subsection contemplates that a drawer will sue its own drawee who, in turn, will sue a collecting or depositary bank.
Peoples breached no warranty in cashing the money order, see N.J.S.A. 12A:3-417 and N.J.S.A. 12A:4-207; and plaintiff cannot sue Peoples directly for breach of a contractual duty. Plaintiff did have a contractual relationship with Chase Manhattan and clearly could have sued Chase Manhattan for its improper charging of plaintiff's account. However, that claim may be barred by defenses arising out of plaintiff's own conduct. To allow a direct action against Peoples would make it difficult to resolve issues that should *280 be decided first and may allow plaintiff to escape responsibility for its own conduct in this transaction. Because plaintiff failed to demonstrate that Peoples' conduct caused its loss, and because Chase Manhattan's defenses against its claim should be preserved and resolved, we conclude that plaintiff's direct claim against Peoples should be disallowed.
Accordingly, the judgment in favor of plaintiff is reversed and judgment is entered in favor of defendant.