KEY APPLIANCE, INC., Respondent-Appellant, v NATIONAL BANK OF NORTH AMERICA, Appellant-Respondent, et al., Defendants. (And Two Other Actions.)

First Department, May 29, 1980

*Edward N. Meyer* of counsel *(James J. Terry* with him on the brief; *Cole & Deitz,* attorneys), for appellant-respondent.

*Stephen S. Bernstein* of counsel *(Sol I. Sokolsky* with him on the brief; *McLaughlin & Stern, Ballen & Miller,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

FEIN, J.

Plaintiff, Key Appliance, Inc. (Key), whose sole stockholders are retailers in the discount appliance business, is a buying co-operative for retail stores. Key's sole business is the purchase of appliances which it resells to retailers as a means of sharing the benefits of mass buying power, carload shipments, volume rebates and joint advertising allowances. For many years plaintiff maintained its principal bank accounts with defendant National Bank of North America (bank), and its predecessor Trade Bank and Trust Company. Several of Key's suppliers gave special discounts if they received timely payment by cashier's check or bank money order. In order to avail itself of this discount, Key drew checks payable to the order of the bank, which were taken to the bank. The bank, immediately in exchange therefor, in each case issued its own cashier's check to the order of the supplier in the same amount as plaintiff's check payable to the bank. Thus, Key's suppliers were paid by the bank's cashier's checks. In the same manner similar bank checks were obtained to pay Social Security and other taxes and interest on loans from the bank.

During a period of five years, more than 1,000 checks were

drawn by Key to the order of the bank for the bank's cashier's checks in payment of Key's obligations. However, 26 of the checks totaling $363,489.50 were presented to the bank by Leonard Lippman (Lippman), Key's comptroller. Pursuant to Lippman's instructions, when he presented these checks he obtained cash in the sum of $363,489.50, and not cashier's checks. Lippman embezzled the proceeds and diverted them to his own use. It is undisputed that the checks were signed by the appropriate officers of the plaintiff and were in all other respects regular on their face. There was no inquiry of Key by the bank at any time as to the authority of Lippman to cash the checks. Plaintiff concedes it was partially reimbursed in the amount of $64,698.93 on account of the embezzlement.

The first cause of action alleges a conspiracy to embezzle plaintiff's funds by several of its former employees and for division of the funds with one of the bank's officers. The parties are agreed that this cause must be resolved at trial.

The second cause of action is for breach of contract. The third cause is for conversion by the bank, and the fourth cause for moneys had and received by the bank.

The bank has asserted 10 affirmative defenses to defeat or mitigate damages against plaintiff's aggregate claim of $363,481.70.

Key concedes that the bank is entitled to partial offset because of a settlement with others.

Special Term denied plaintiff's motion for partial summary judgment in the sum of $298,790.53 against the bank on the second, third or fourth causes of action. However, it granted plaintiff's motion to the extent of making the following findings deemed established for all purposes in this action, pursuant to CPLR 3212 (subd [g]):

"(1) In receiving checks payable to itself, and disbursing them for cash, and since the plaintiff was not indebted to the defendant National Bank of North America, the Bank's duty as to the authority of Lippman to receive payment in cash instead of an exchange for cashier's checks was to make inquiry of the plaintiff.

"(2) In these circumstances the defendant National Bank of North America took the risk of treating the checks as payable to bearer and was negligent, therefore, in disbursing plaintiff's money without receiving proper instructions and without having made any inquiry."

Special Term further granted plaintiff's motion to the extent of striking all of the affirmative defenses except the first and the eighth.

The bank's cross motion for summary judgment dismissing the second, third and fourth causes of action was denied. The bank, as limited by its brief, appeals from so much of the order as denied its cross motion to dismiss the second, third and fourth causes of action and struck the second and third affirmative defenses, and made the above-described findings. Plaintiff cross-appeals from the denial of its motion for partial summary judgment and refusal to strike the first and eighth affirmative defenses. Thus the issues on these appeals are whether the second cause of action for breach of contract, the third cause of action for conversion and the fourth cause of action for money had and received are sufficient and whether the first, second, third and eighth affirmative defenses are sufficient and whether either party is entitled to summary judgment. The first affirmative defense is that plaintiff is barred by its failure to examine its monthly statements; the second is that plaintiff is barred as to all checks cashed prior to September 30, 1975, when the bank was notified; the third is that the monthly statements amounted to an account stated, thus barring plaintiff; the eighth affirmative defense is that defendant is entitled to credit for a settlement.

A bank is negligent in disbursing its depositor's money if it does so without receiving proper instructions and without having made any inquiry (*Arrow Bldrs. Supply Corp. v Royal Nat. Bank of N. Y.,* 21 NY2d 428, 431; and *Matteawan Mfg. Co. v Chemical Bank & Trust Co.,* 244 App Div 404, mod 272 NY 411). In receiving checks drawn on and payable to itself properly signed by those authorized to sign on behalf of the depositor, the bank was on notice the checks had commercial significance and had a duty to inquire as to the disposition of the funds. It could not properly rely on the directions of one who was without either actual or apparent authority to represent the drawer (*Arrow Bldrs. Supply Corp. v Royal Nat. Bank, supra; Matteawan Mfg. Co. v Chemical Bank & Trust Co., supra*). In cashing the checks, the bank relied solely on the instructions of Lippman. Although cashing checks in small amounts without inquiry may not be unusual, cashing 26 checks in odd and large amounts so as to total $363,489.50 is plainly not ordinary banking practice. The bank, in effect, acknowledges this. However, it relies upon the resolution

drawn by the bank but duly executed and filed by Key as follows: " 'RESOLVED, That the Bank is hereby authorized to pay any such instrument or make any such charge and also to receive the same from the payee or any other holder without limitation of amount and without inquiry as to the circumstances of issue, negotiation or endorsement or the disposition of the proceeds even if drawn to the individual order of any signing person, or payable to the Bank' ".

The bank contends that this, in effect, authorized it to cash checks made payable to it. However, the bank overlooks the balance of the resolution which required two signatures on the checks. Thus, the checks were signed by two authorized signatories as required, making them payable to the bank. The instructions to cash them came from Lippman alone. Although he was an authorized signer, he very often did not sign the checks he cashed. In this respect the case is significantly different from *Funt Prod. v Chemical Bank* (63 AD2d 629; affd 47 NY2d 741) on which the bank relies. There the culprit was authorized by the resolution to sign checks individually and to make them payable to himself or to cash and he was designated as the person to whom the bank statements were to be sent. No such resolution here exists.

Nowhere in the resolution here is there any language indicating authority to cash checks upon presentation. It further appears that on the face of two or three of the checks which were cashed there was an indication that they were intended in payment of the obligations of Key to suppliers. Despite this the bank deviated from the authorized practice of issuing its cashier's check payable to the indicated vendor in the designated amount. Moreover, there is deposition testimony that when Lippman took some of the checks to the bank branch where he obtained the cash upon the direction of defendant William Shea, one of the bank's officers, Shea made inquiry of his superior (Meisner), who made further inquiry of a vice-president of the bank (Meyers) as to whether the checks should be cashed. It is asserted that Meyers and Meisner acknowledged that the practice was unusual, but authorized Shea to cash the checks. Meyers had denied any such conversation. However, he and Meisner testified that it is not usual bank practice to cash checks in such amounts under such circumstances, and that to do so violated the bank's rules and regulations.

■ Special Term found the bank negligent in cashing such

checks without inquiry. It did not comment upon the effect of the bank resolution nor upon the testimony concerning the questions raised as to the practice of cashing such checks. We have concluded that there is a triable issue as to whether the bank breached its contract and was negligent in the light of the bank resolution and the general practice of the bank and the alleged conversations among its officers.

The bank contends that even if it were negligent in failing to make inquiry, Key cannot recover because of Key's obligation to examine the canceled checks and statements received from the bank and to notify the bank promptly of any irregularities in the account.

The law is well settled that a depositor is under a duty to his bank to make such examination. If a depositor disregards this duty, any further losses occurring as a result of such omission must be borne by the depositor unless the bank itself is guilty of contributory negligence *(Federal Ins. Co. v Groveland State Bank,* 37 NY2d 252; *Arrow Bldrs. Supply Corp. v Royal Nat. Bank,* 21 NY2d 428, *supra; Potts & Co. v Lafayette Nat. Bank,* 269 NY 181; *Matteawan Mfg. Co. v Chemical Bank & Trust Co.,* 244 App Div 404, *supra; Screenland Mag. v National City Bank of N. Y.,* 181 Misc 454).

Plaintiff contends that this well-settled principle is not applicable here because the statements received by it, together with its canceled checks, would not reveal that some of the checks had been cashed and diverted by Lippman, since the markings on the checks did not clearly indicate the purpose for which the checks were made payable to the bank. It appears that in some cases there were notations on the checks indicating the name of the supplier to whom the bank was to issue its cashier's check, but this practice was not uniform. The bank points out that even if this were so, the plaintiff could have ascertained the substantial deficiency in its balances in that many of the checks cashed by Lippman were duplicates of checks actually issued and paid to the appropriate suppliers. Plaintiff asserts, in accordance with well-settled principles, that the knowledge of Lippman, the embezzler, as to the state of Key's records is not knowledge which may be imputed to the plaintiff to bar recovery *(Potts & Co. v Lafayette Nat. Bank,* 269 NY, at p 187; *Arrow Bldrs. Supply Corp. v Royal Nat. Bank, supra; Screenland Mag. v National City Bank of N. Y., supra).*

■ ■ There are issues of fact as to whether plaintiff exer-

cised reasonable care in examining its statements and returned checks and whether its conduct contributed to the loss incurred. It follows that Special Term improperly struck the first, second and third affirmative defenses, which in substance rely on plaintiff's alleged failure to examine its statements and canceled checks and to notify the bank of the irregularities. The eighth affirmative defense is properly pleaded, since there is an issue of fact as to whether and to what extent plaintiff's settlement with Lippman covers in whole or in part the proceeds of the embezzled checks.

The order, Supreme Court, New York County (GABEL, J.), entered May 15, 1979, granting plaintiff's motion for partial summary judgment in part and striking and dismissing defendant's second, third, fourth, fifth, sixth, seventh, ninth and tenth affirmative defenses and specifying and deeming established for all purposes certain facts and conclusions and denying defendant's cross motion for summary judgment should be modified, on the law, to deny the motion to strike the second and third affirmative defenses and to vacate the third decretal paragraph and its subdivisions which specified and deemed established for all purposes in this action certain facts and conclusions, and otherwise affirmed, without costs.

BIRNS, J. P., SULLIVAN, MARKEWICH and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered May 15, 1979, modified, on the law, to deny the motion to strike the second and third affirmative defenses and to vacate the third decretal paragraph and its subdivisions which specified and deemed established for all purposes in this action certain facts and conclusions, and otherwise affirmed, without costs and without disbursements.