# Second National Bank of Pittsburg, Appellant, *v.* Guarantee Trust and Safe Deposit Company of Shamokin.

*Banks and banking—Checks—Forgery—Indorsement.*

One who has paid a check to one holding under a forged indorsement may recover back the amount if he proceeds with due diligence.

A beneficial association drew a check on a bank payable to the order of a brother of a beneficiary. The brother's name was forged upon the back of the check. The forged indorsement was followed by another indorsement, and the last indorsement, that of a trust company, expressly guaranteed the previous indorsements. The check was drawn upon a bank which was the depository of the beneficial association. The check was paid. Subsequently on discovery of the forgery, the bank demanded the money back from the trust company, and upon the latter's refusal to pay, brought suit. The trust company filed an affidavit of defense alleging that the check had been drawn by the beneficial association without proper precaution, inasmuch as the beneficiary was still alive. It then imputed this negligence to the bank as depository of the association. *Held,* that the affidavit of defense was insufficient to prevent judgment.

Argued May 25, 1903. Appeal, No. 201, Jan. T., 1902, by plaintiff, from order of C. P. Northumberland Co., May T., 1901, No. 187, discharging rule for judgment for want of a sufficient affidavit of defense in case of Second National Bank of Pittsburg v. Guarantee Trust and Safe Deposit Company of Shamokin. Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ. Reversed.

Assumpsit to recover money paid on a draft with a forged indorsement.

The draft was as follows:

## "SUPREME TENT,

K. O. T. M. of the World.                              No. 5624.

"Port Huron, Mich., Oct. 6, 1900.

" Pay to the order of John Davis brother and beneficiary of Benjamin Davis of Tent No. 75 State of Penn. ($3000.00) Three Thousand Dollars and charge to Life Benefit Fund, Supreme Tent K. O. T. M.

"To Second National Bank        D. P. Markey, Supreme Com.
    Pittsburg, Penn.
Designated Depository.           G. J. Seigle, Supreme R. K.

"Endorsements.

" John Davis brother and beneficiary of Benjamin Davis of Tent No 175, State of Penn.

" O. J. Reed, Record Keeper of Tent 175, Shamokin, Pa.

"Pay to the order of any Bank, Banker or trust Co. Previous endorsements guaranteed.   The Guarantee Trust and Safe Deposit Company, Shamokin, Pa.

" Henry L. Lean.
" Treasurer."

The affidavit of defense was as follows:

That on October 6, 1900, O. J. Reed, a Record Keeper of Tent No. 175, Shamokin, Pa., of the Knights of the Maccabees, upon fraudulent proofs of death of a man by the name of Benjamin Davis, who was insured in the life benefit fund of the Supreme Tent of the Knights of the Maccabees of the World, for the benefit of his brother, John Davis, obtained a draft from the order of Maccabees, for the sum of $3,000, payable to the order of John Davis. It was alleged that the said O. J. Reed forged the indorsement of the said John Davis upon the said draft, and presented the same to the Guarantee Trust and Safe Deposit Company of Shamokin, Pa., and through it had it forwarded for collection to the Second National Bank of Pittsburg, Pa., the depository of the Knights of Maccabees, which said bank, the plaintiff in this suit, remitted the amount

of the said draft, so collected, to the defendant, that the said defendant had no notice of the said fraud or forgery until October 31, 1900, when notice was received by the defendant that it was suspected that a fraud had been perpetrated by the said O. J. Reed upon the Supreme Tent of the Knights of the Maccabees of the World, in obtaining the said draft, which was finally confirmed by subsequent notice on November 2, 1900.

The deponent avers that it was through the carelessness and negligence of the Knights of the Maccabees and the fraud and forgery of its agent, the said O. J. Reed, Record Keeper of Tent No. 175, of Shamokin, Pa., that a death claim was approved by the said order, and a draft issued when, with proper precaution it would have been ascertained that the man insured was alive; that the said order of the Knights of the Maccabees put in circulation the said fraudulent draft by means of which the said defendant indorsed the same, and forwarded it for collection to its agent, the plaintiff, in the city of Pittsburg, and had not the said draft been carelessly and negligently issued and put in circulation by the Knights of the Maccabees, the said defendant would not be called upon to pay the said fraudulent and forged draft, and the deponent is advised, and therefore avers in behalf of the said defendant, that the said order of the Knights of the Maccabees cannot lawfully recover the amount of the said draft declared upon, so fraudulently issued by it and negligently put into circulation, and that the plaintiff in this suit, being the depository of the funds of the said order of the Knights of the Maccabees, is in no better position, and is not entitled in law to recover the amount of said draft so negligently put in circulation, for the reason that it is the agent of the said order of the Knights of the Maccabees, which is responsible for the amount of the said draft, by reason of its carelessness and negligent management, and carelessly and negligently putting into circulation the said draft, based upon a death claim when, with ordinary diligence, it could have ascertained that the person insured was alive.

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*W. H. M. Oram*, for appellant.—Whatever may be the law

in other states, in Pennsylvania the right of the payor to recover back the money paid on a draft, the signature or indorsement of which is forged, is now settled, both by statute and authority: Act of April 5, 1849, P. L. 424; Corn Exchange Nat. Bank v. Bank of the Republic, 78 Pa. 233; United Security Co. v. Cent. Nat. Bank, 42 W. N. C. 145; Lehigh Coal & Nav. Co. v. Blakeslee, 189 Pa. 13; McConeghy v. Kirk, 68 Pa. 200; Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46; Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230; Tradesmen's Nat. Bank v. Third Nat. Bank, 66 Pa. 435; Rick v. Kelly, 30 Pa. 527; Roth v. Crissy, 30 Pa. 145.

*S. P. Wolverton,* with him *A. G. Marr,* for appellee, cited: States v. First Nat. Bank of Montrose, 203 Pa. 69; Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46; Nassau Bank v. Nat. Bank of Newburgh, 159 N. Y. 456 (54 N. E. Repr. 66); Coggill v. American Exchange Bank, 1 N. Y. 113; Merchants' Loan & Trust Co. v. Bank of the Metropolis, 7 Daly (N. Y.), 137.

OPINION BY MR. JUSTICE POTTER, July 9, 1903:

This is an appeal from the order of the court below discharging a rule for judgment for want of a sufficient affidavit of defense.

On, or about October 6, 1900, the Supreme Tent of the Knights of Maccabees of the World drew a draft upon the Second National Bank of Pittsburg, payable to the order of John Davis, a brother and beneficiary of Benjamin Davis, of Tent No. 175, Shamokin, Pa. The draft, however, seems not to have been paid to John Davis, the payee, or to his order. His name was, however, forged by some one and appears upon the back of the draft. It is followed by the indorsement of O. J. Reed, Record Keeper of Tent No. 175, Shamokin, Pa. This indorsement is again followed by that of the Guarantee Trust & Safe Deposit Company, Shamokin, Pa., which also guarantees the previous indorsements.

The draft bearing these indorsements was presented to the plaintiff bank for payment on October 12, 1900, and was paid by it. Afterwards upon the last day of the same month, the

plaintiff was notified not only that the indorsement of the name of John Davis, the payee of the said draft, was a forgery, but that a fraud had been perpetrated upon the beneficial order by falsely representing that Benjamin Davis, a member of the order, was dead, and that his beneficiary, John Davis, was therefore entitled to receive the amount of the death benefit. Plaintiff at once notified the defendant of the fraud and shortly afterwards demanded repayment of the money for the draft. This was refused and this suit was brought to recover from the defendant as indorser.

The defendant in its affidavit of defense admits all the facts of the transaction, but endeavors to avoid liability by averring that the draft was issued by the order of the Knights of Maccabees without proper precaution having been taken to ascertain whether or not the person insured was alive. It then imputes this alleged negligence of the beneficiary order to the plaintiff bank, by reason of its being the depository of the funds of the said order. The matter which it is thus sought to inject into the case as a defense has no proper place there.

The liability of the defendant here is that of an indorser. The form in which its indorsement was placed upon the back of the draft, was not the mere writing of its name there, which of itself would create an implied warranty of the genuineness of the previous indorsements, but it was more; the defendant expressly guaranteed the previous indorsements. What reason then is there for excusing it from complying with the terms of its contract? None that we can discover in the affidavit of defense. This action is between the bank and the last previous indorser. The drawer of the draft is not a party. The duty of the defendant is to take up the draft, as it agreed to do in case anything was found wrong with the previous indorsements, and then it in turn can fall back upon the party from whom it received the draft, and who indorsed to it. We fail to see any relevancy whatever in the suggestion that the beneficial order was negligent in issuing a draft to pay a death benefit for a member who was yet alive. That is not the point in this case. Whether or not it failed to make due inquiry matters not in this proceeding. That would go only to the question of consideration as between the order and the beneficiary. Upon what it considered satisfactory proof, the order

drew its draft upon the bank for a sum of money, payable to the order of John Davis. It had a right to require that its direction in this respect should be carried out. The draft was payable only upon the order of John Davis. And until John Davis did actually order or direct the payment of a draft to some one else, the title to the instrument remained in him, and never properly passed from him. When the defendant therefore took the draft without knowing whether or not the signature of John Davis, which appeared upon the back of the draft, was genuine, it took the instrument at its own peril. Its liability in this respect was expressly recognized by its volunteering to guarantee the previous indorsements. The form in which the defendant indorsed the draft, makes clear its intention not only to transfer, but to be bound as indorser, and as guaranteeing the validity of the prior indorsements. The defendant is, therefore, clearly liable in this case. To hold otherwise would be to deny to the plaintiff the benefit of the general rule that one who has paid a bill or draft to one holding it under a forged indorsement may recover back the amount if he proceed with due diligence.

The order discharging the rule is reversed, and the record is remitted to the court below with directions to enter judgment for the plaintiff unless other legal or equitable cause be shown to the court below why such judgment should not be entered.