**GIRARD BANK, Plaintiff,**

v.

**MOUNT HOLLY STATE BANK, Defendant,**

v.

**Darlene PAYUNG and Penn Mutual Life Insurance Company, Third-Party Defendants.**

**Civ. A. No. 78–539.**

United States District Court,
D. New Jersey.

July 27, 1979.

As Amended July 31, 1979.

Archer, Greiner & Read by John B. Kearney, Haddonfield, N. J., for plaintiff Girard Bank.

Bleakley, Stockwell & Zink by Salvatore A. Alessi, Camden, N. J., for defendant and third-party plaintiff Mount Holly State Bank.

Capehart & Scatchard, P. A. by William F. Keating, Moorestown, N. J., for third-party defendant Penn Mutual Life Insurance Co.

Avena, Hendren & Friedman, P. A. by James R. Hendren, Camden, N. J., for third-party defendant Darlene Payung.

## OPINION

BROTMAN, District Judge.

This case presents intriguing questions concerning commercial paper transactions and Articles 3 and 4 of the Uniform Commercial Code. In particular, the court must determine to what extent the negligence of the drawer of a check affects the liability of a depository bank for a forged indorsement under the U.C.C. and common law. The drawee bank has sued the depository bank on its presentment warranty and now seeks summary judgment, while the depository bank defends by asserting the drawer's negligence. The depository bank has also sued the drawer directly in a third-party claim, on which the drawer now seeks summary judgment. The court is asked to hold that certain types of negligence by the drawer, no matter how serious, will not preclude liability of a depository bank or other party taking a check bearing a forged indorsement.

## I. Factual and Procedural Background

Certain facts are not disputed by the litigants. On August 4, 1977, third-party defendant Penn Mutual Life Insurance Company issued its check numbered 377406, dated August 4, for $28,269.54 to a Morris Lefkowitz of New York City, as a return of a policy premium. The check was drawn on Penn Mutual's account at plaintiff Girard Bank in Philadelphia. The check, prepared and signed in Philadelphia, was to be sent by mail to Penn Mutual's agency in New York for distribution to Mr. Lefkowitz.

On August 5, third-party defendant Darlene Payung deposited the check in her account at Mount Holly State Bank of Mount Holly, New Jersey, the defendant and third-party plaintiff. The check bore a forgery of Mr. Lefkowitz's signature as an indorsement; the origin of the forgery is disputed. Ms. Payung also added her signature as an indorsement when she deposited the check. Mount Holly transferred the check through normal banking channels to Central Penn National Bank of Philadelphia, which then presented it for payment to the drawee and payor, Girard. Mount Holly, the depository and a collecting bank, recovered the full amount of the check from Central Penn.

The facts surrounding the discovery of the forgery are disputed but much of the evidence submitted for these summary judgment motions is uncontroverted. According to a Penn Mutual official, its New York agency first alerted the Philadelphia office that the check had not been received by a telephone call on August 19; the agency had become aware about August 11 that the check might be missing. Deposition of Ronald M. Sherlock at 74–75. Mr. Sherlock further states that both Girard and Mount Holly were notified that the check was missing on the 19th. *Id.* at 74–75, 86.

John Hall, executive vice president of Mount Holly, has indicated in his deposition that Mr. Sherlock indeed notified Mount Holly on the morning of the 19th, enabling the bank to freeze the remaining $5600 in Ms. Payung's account. Deposition of Hall at 8–9. Most of the proceeds had already been withdrawn by Ms. Payung. *Id.* at 13–14.

Mr. Sherlock of Penn Mutual also discussed the check with a Girard Bank officer on August 25, the same day that Mr. Lefkowitz signed an affidavit swearing that the indorsement was forged. Deposition of Sherlock at 86; Plaintiff's Exhibit B. That telephone conversation was confirmed by letter dated August 26 from Penn Mutual to Girard. Affidavit of Robert Torzone ¶ 3 and Accompanying Exhibit A.

It is not certain how the check was stolen and forged. Mount Holly maintains that several checks had been stolen by Penn Mutual employees prior to August 4, and that the company knew of the problem and unreasonably failed to take proper security measures. The defendant further contends that it can prove at trial that the Lefkowitz check, which was deposited at Mount Holly the day after it was drawn, was stolen by a Penn Mutual employee.

Girard has sued Mount Holly to recover on the latter's presentment warranty which it alleges was breached by the forged check. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a). Mount Holly has filed third-party complaints against Ms. Payung and Penn Mutual, while the two third-party defendants have cross-claimed against each other. Girard now seeks summary judgment against Penn Mutual for the full amount of the check, and Penn Mutual has asked for summary judgment dismissing Mount Holly's third-party claim against it. The claims by and against Ms. Payung are not at issue here.

## II. Drawee's § 4–207 Claim

### A. Choice of Law

Neither party disputes that New Jersey law applies to Girard's claim against Mount Holly. This court must follow the choice of law rule of New Jersey in determining what state's substantive law should apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Section 4–102(2) of the Uniform Commercial Code, as codified in New Jersey, N.J.Stat. 12A:4–102(2), states in pertinent part:

(2) The liability of a bank for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located.

The term "liability" in the statute is most logically construed to mean the legal liability of the collecting bank, Mount Holly, on its presentment warranty, rather than the actual loss to the drawee bank, Girard, if its warranty claim is unsuccessful. This construction is supported by Official Comment 2 c.[1] Accordingly, the law of New Jersey, where Mount Holly is located, will apply to Girard's claim.

### B. Presentment Warranty

Girard seeks recovery for Penn Mutual's breach of its presentment warranty under N.J.Stat. 12A:4–207(1)(a). (Further citation to the Code will omit the codification title N.J.Stat. 12A, and titles in other states where an enactment of the Code is construed.) That statute provides in pertinent part:

4–207. Warranties of Customer and Collecting Bank on Transfer or Presentment of Items; Time for Claims.

(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . .

The forged indorsement prevented Mount Holly, the depository and collecting bank, from obtaining good title to the check, and Mount Holly therefore breached its warranty. *See* § 3–417, Comment 3; § 4–207, Comment 1; J. White & R. Summers, *Uniform Commercial Code* 510 & n. 37 (1972).[2] The overriding scheme of the

---

1. Comment 2 c to § 4–102 provides in part:

 c. The phrase "action or non-action with respect to any item handled by it for purposes of presentment, payment or collection" is intended to make the conflicts rule of subsection (2) apply from the inception of the collection process of an item through all phases of deposit, forwarding, presentment, payment and remittance or credit of proceeds. Specifically the subsection applies to the initial act of a depositary bank in receiving an item and to the incidents of such receipt. . . . The subsection applies to action or non-action of a payor bank in con-

nection with handling an item (see Sections 4–213(1), 4–301, 4–302, 4–303) as well as action or non-action of a collecting bank (Sections 4–201 through 4–214); to action or non-action of a bank which suspends payment of is affected by another bank suspending payment. (Section 4–214); to action or non-action of a bank with respect to an item under the rules of Part 4 of Article 4.

2. The forged indorsement of Mr. Lefkowitz's name in blank does not convert the check into a valid bearer instrument which could allow Ms. Payung to pass good title. *See* §§ 3–202, 3–404(1); White & Summers, *supra*, at 459.

Code is to place liability on the person who takes from the forger, which is often the depository bank. The rationale is that this party is normally in the best position to detect the forgery and prevent the fraud. *See, e. g., Perini Corp. v. First National Bank of Habersham County*, 553 F.2d 398, 405 (5th Cir. 1977). This has long been the policy of negotiable instruments law. *See, e. g., Standard Accident Insurance Co. v. Pellecchia*, 15 N.J. 162, 189, 104 A.2d 288, 302–03 (1954).

This policy is reflected throughout Articles 3 and 4 of the Code. Various sections indicate that a check bearing a forged indorsement is not "properly payable" within the terms of § 4–401(1). *See Perini*, 553 F.2d at 403 & n. 7. That section indicates that, absent cognizable negligence on the part of the drawer, the drawee bank may not charge the drawer for a check that is not "properly payable." However, the drawee which has paid the check may seek recovery against prior banks in the collection chain for breach of presentment warranty under § 4–207. The depository bank may also sue the prior transferring party under a similar warranty provided in § 3–417. In the instant case, Mount Holly, if found liable to Girard, may be able to shift the loss back to the prior transferor, Ms. Payung. However, it is often the case that a depository bank will be unable to recover from a prior party and will ultimately bear the loss.

■ While the Code essentially presumes that the depository bank (or prior party) was negligent in accepting the check and should be held liable, that bank can sometimes shift the loss to the drawer or drawee if those parties were negligent. Mount Holly does not deny the applicability of § 4–207 here, but raises various negligence defenses under several Code provisions.

### C. § 4–207(4) Defense

■ Mount Holly first contends that it is relieved of liability on its warranty by subsection (4) of § 4–207, which states:

(4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim.

Mount Holly argues that there is a genuine issue of material fact precluding summary judgment as to whether Girard asserted its claim within a reasonable time.

While reasonableness has been held to present a fact question, *Phoenix Assurance Co. v. Davis*, 126 N.J.Super. 379, 391, 314 A.2d 615, 622 (Law Div. 1974), the court finds there is nothing in the record to show that Mount Holly suffered a loss as the result of any delay by Girard in making its claim against Mount Holly. Mount Holly's vice president stated in his deposition that the bank was notified of a problem the morning of August 19, and immediately froze the remaining proceeds of the check. Uncontroverted evidence also indicates that Girard was first notified of the problem on August 19. Therefore any delay in Girard's noticing Mount Holly could not possibly have caused any loss since all proceeds of the check were frozen the same day Girard first learned it had a claim against Mount Holly. There is no factual issue here, and this defense can be precluded as a matter of law. *See Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 99 (Mo.App.1976).

### D. § 3–405 Defense

■ Mount Holly next asserts that § 3–405 of the Code precludes Girard's warranty claim. This section provides:

3–405. Impostors; Signature in Name of Payee.

(1) An indorsement by any person in the name of a named payee is effective if

(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the

name of the payee intending the latter to have no such interest.

(2) Nothing in this section shall affect the criminal or civil liability of the person so indorsing.

The section does not explicitly place liability on the drawer; rather it renders a forged indorsement "effective," thereby precluding liability of a collecting bank on a § 4–207 warranty and liability of a drawee bank to its customer under § 4–401, thus shifting the loss to the drawer. *See* White & Summers, *supra* at 541–43. These provisions can be invoked against a drawer which has been defrauded in certain specified ways. Mount Holly believes that § 3–405(1)(c) is applicable here. Paragraph (1)(c) refers to the padded payroll situation where the drawer is defrauded by its employee before or during preparation of its checks. *See* White & Summers, *supra* at 542–44. The Code drafters have explained the policy behind this paragraph in Comment 4:

> The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

Taking Mount Holly's contentions as true, the most it could show at trial is that a dishonest Penn Mutual employee had stolen a properly prepared check. There is no evidence whatsoever indicating that an employee added Mr. Lefkowitz's name to a list of payees intending him not to receive the check. It is undisputed that the company intended to pay the true Mr. Lefkowitz.

The New Jersey Appellate Division, in an opinion affirmed by the supreme court per curiam, has held that simple conversion of checks by a dishonest employee through theft and subsequent forging of indorsements is not within the meaning of paragraph (1)(c). *Snug Harbor Realty Co. v. First National Bank of Toms River*, 105 N.J.Super. 572, 253 A.2d 581 (App.Div.), *aff'd*, 54 N.J. 95, 253 A.2d 545 (1969). The court noted that the payees were bona fide creditors of the company. 105 N.J.Super. at 574, 253 A.2d at 582. The Third Circuit Court of Appeals, applying Pennsylvania's § 3–405, has also held that paragraph (1)(c) is inapplicable where a true debt is owed the payee. *New Amsterdam Casualty Co. v. First Pennsylvania Bank & Trust Co.*, 451 F.2d 892, 898 (3rd Cir. 1971). *See also* Official Comment 4.

Section 3–405 does not apply here and provides no defense against summary judgment for Girard.

### E. § 4–406(5) Defense

Finally, Mount Holly contends Girard is precluded from asserting breach of warranty by subsection (5) of § 4–406 of the Code. That section states:

4–406. Customer's Duty to Discover and Report Unauthorized Signature or Alteration.

(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim.

Girard asserts two reasons why subsection (5) is unavailable to Mount Holly.

1. Applicability to Forged Indorsements

█ First, Girard argues that the phrase "the unauthorized signature or alteration" in this subsection does not refer to forged indorsements, and therefore the subsection cannot be used by Mount Holly here. How-ever, the court concludes that "unauthorized signature" includes both forged drawer's signatures and forged indorsements. The text of subsection (2) of this section implicitly supports this construction. While paragraph (b) refers to "*an* unauthorized signature," paragraph (a) reads, referring to the drawer/customer, "*his* unauthorized signature." The "his" in paragraph (a) would be unnecessary if unauthorized signature included only the drawer's name. *See* Comment, *Check Forgeries: Variations of Rules of Liability Based on Fault—UCC Defense Sections 3–406 and 4–406*, 12 Ariz. L.Rev. 417, 422 (1970). The court also notes that § 3–406 uses the same phrase, and its accompanying Comment 7 specifically refers to forged indorsement situations. The New Jersey Appellate Division has held that the phrase in § 3–406 applies to forged indorsements. *Gast v. American Casualty Co. of Reading, Pa.*, 99 N.J.Super. 538, 542, 240 A.2d 682, 685 (App.Div.1968).

While subsection (43) of § 1–201, the general definition section, contains the language " '[u]nauthorized' signature or indorsement means . . . ."[3] and subsection (4) of § 4–406 also uses both terms, this cannot be taken to indicate that an indorsement is not a signature, particularly given the language of § 3–414(2) which uses the terms interchangeably.[4]

One commentator has written that paragraph (5) "appears not to cover the case of unauthorized indorsements." E. Peters, *A Negotiable Instruments Primer* 83 (2d ed. 1974). But Professor Peters still advocates incorporation of forged indorsements "either by legerdemain or by analogy." *Ibid.* Finally, other courts have applied this provision to forged indorsement situations without comment. *E. g., Allied Concord Financial Corp. v. Bank of America National Trust and Savings Association*, 275 Cal. App.2d 1, 80 Cal.Rptr. 622, 626 (1969);

---

3. Section 1–201(43) provides:

(43) "Unauthorized" signature or indorsement means one made without actual, implied or apparent authority and includes a forgery.

4. Section 3–414(2) provides:

(2) Unless they otherwise agree indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument.

*Michigan National Bank v. American National Bank & Trust Co.*, 34 Ill.App.3d 30, 339 N.E.2d 375, 377 (1975); *Life Insurance Co. of Virginia v. Snyder*, 141 N.J.Super. 539, 544, 358 A.2d 859, 862 (Dist.Ct.1976); *Lewittes Furniture Enterprises, Inc. v. Peoples National Bank of Long Island*, 82 Misc.2d 1013, 372 N.Y.S.2d 830, 833 (Dist.Ct. 1975).

**2. § 4–406 Drawee's Defenses**

Girard contends that even if subsection (5) applies to forged indorsement cases, the provision can be used to preclude its warranty claim only if it has failed to assert a valid defense "under this section," that is, one of the defenses stated in the other subsections of § 4–406. Girard further argues that each of these subsections is inapplicable as a matter of law.

Subsection (4) refers to failure of the drawer to report a forged indorsement within three years of receipt of the item, so is clearly not relevant to the instant case. Subsection (3) deals with the contributory negligence of the drawee bank and is also inapplicable. However, Mount Holly maintains that Penn Mutual failed to exercise reasonable care in reporting the item, as required by subsection (1), and therefore created a defense for Girard under subsection (2).

■ But subsection (1) applies only to failure to report a forged drawer's signature or an alteration. Mount Holly argues that alteration includes a forged indorsement. While the definition of material alteration in § 3–407 does not address this question, New Jersey Study Comment 1 to § 4–406 indicates that subsection (1) does not require scrutiny of indorsements. Furthermore, the language in paragraph (2)(b) would be redundant if the term "an unauthorized signature" included forged indorsements (as concluded above) and the term "alteration" also included such a forgery.[5]

Subsection (4) would also be redundant as it names both indorsements and alterations.

The Ohio Court of Appeals has specifically held that the term "alteration" in subsection (1) does not refer to forged indorsements. *Society National Bank v. Capital National Bank*, 30 Ohio App.2d 1, 281 N.E.2d 563, 567 (1972). A New Jersey superior court has stated that § 4–406(1) does not encompass unauthorized indorsements. *Kraftsman Container Corp. v. United Counties Trust Co.*, 169 N.J.Super. 488, at 492, 404 A.2d 1288, at 1290 (N.J.Super., Law Div. 1979). *Accord,* E. Peters, *supra* at 82.

**3. Drawee's § 3–406 Defense**

Mount Holly contends that even if it cannot preclude Girard's claim on the basis of Girard's failure to assert a defense under § 4–406, it may still, under § 4–406(5), require that Girard assert a defense against its customer Penn Mutual based on § 3–406. Girard disagrees, stressing the § 4–406(5) language "If *under this section* a payor bank has a valid defense. . . ."

Section 3–406 provides:

3–406. Negligence Contributing to Alteration or Unauthorized Signature.

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

According to Mount Holly, Penn Mutual was negligent in supervising the issuance of its checks, and this negligence substantially contributed to this unauthorized indorsement. Therefore, Mount Holly argues, Penn Mutual is precluded by § 3–406 from

---

5. Inclusion of indorsements in paragraph (2)(b) is not inconsistent with their exclusion in subsection (1). Subsection (1) declares that a drawer must exercise care to discover a forged drawer's signature and must promptly report any such forgery; paragraph (2)(b) refers to later items with indorsements forged by the same wrongdoer who earlier forged the drawer's signature on an item that was not promptly reported.

asserting the forgery against the drawee Girard, and the latter's failure to raise § 3–406 against Penn Mutual prevents Girard from recovering against Mount Holly under § 4–406(5).

Mount Holly's position warrants careful consideration. The court notes that § 3–405, where appropriate, may always be raised by the depository bank against the drawee. Under § 4–406(5) the depository bank may require the drawee bank to raise subsection (1) and (4) negligence against the drawer before the drawee passes liability back to prior parties. And § 3–406 allows the drawee to raise other forms of negligence against the drawer and relieve prior parties of liability.

But under Girard's interpretation of § 4–406(5), as long as the drawee chooses to credit its customer's account and not assert § 3–406, and instead sue the prior collecting or depository bank, § 3–406 drawer negligence will be ignored. This gap in the Code provisions can be very wide in certain situations. For instance where a drawer regularly leaves prepared checks where strangers can easily steal them, this gross negligence—cognizable under § 3–406 but not §§ 3–405 or 4–406(1) or (4)—will go unremedied if the drawer's bank chooses to credit its account and shift the liability back to the collecting bank. It is in fact likely that a drawee bank will be more willing to ignore its own customer's negligence when a remedy against another bank is available.

A depository bank often has the opportunity to prevent forgeries, but a clever wrongdoer can sometimes make it virtually impossible for a depository bank to detect a forged indorsement, even where the depository bank pays only after the check has cleared. *See* White & Summers, *supra* at 492; Comment, *Allocation of Losses from Check Forgeries Under the Law of Negotiable Instruments and the Uniform Commercial Code*, 62 Yale L.J. 417, 417 (1953). It is particularly difficult for the bank to detect the forgery where the check is deposited by an innocent party which took from the wrongdoer; and the bank may not always

be able to later recover the full amount of the check from that innocent transferor.

Where the depository bank was diligent, and the drawer's negligence substantially contributed to the forgery, it seems arbitrary to allow the drawee bank to determine whether the negligent drawer or the innocent depository bank will bear the liability. As one commentator has stated, citing the posited situation as an example:

> Gearing loss allocation to negligence is blatantly thwarted where one party, by waiving a defense, can immunize a negligent person from attack of others who must then bear the loss.

Comment, *Allocation of Losses, supra* at 450 & n. 160. Since the drawee will often turn only to the depository bank for recovery, the policy of deterring negligent drawers, which is behind §§ 3–405, 3–406 and 4–406, is undermined. It should also be noted that it is just as easy for a large issuer of checks, such as Penn Mutual, to insure against forgery losses as it is for a depository bank to insure. *See id.* at 435–38.

Another commentator has written that incorporation of § 3–406 into the § 4–406 preclusion is the solution to this problem:

> If the payor bank could ignore the drawer's negligence and pass the loss to the collecting bank, what cause of action would the latter have against the drawer? . . . To avoid this lack-of-remedy dilemma, section 4–406(5) should be read as requiring the payor bank to raise the section 3–406 negligence in the manner of that section, as a defense, but the collecting banks should bear the expense of the litigation win or lose since they are in the breach of their section 4–207(1)(a) warranty of good title either way.

Whaley, Negligence and Negotiable Instruments, 53 N.C.L.Rev. 1, 21 (1974).

A few courts have stated or implied in dictum that this is a proper construction. *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358, 363 (1962); *Canadian Imperial Bank of Commerce v. Federal Reserve Bank*, 64 Misc.2d 959, 316 N.Y.S.2d 507, 509

(Sup.Ct.1970); *Society National Bank,* 281 N.E.2d at 566–67.[6]

■ However, the one court squarely addressing the issue ruled that § 3–406 cannot be incorporated into the § 4–406(5) preclusion. *Mellon National Bank & Trust Co. v. Merchants Bank of New York,* 15 UCC Rep.Serv. 691 (S.D.N.Y.1972), not otherwise reported. The *Mellon Bank* case is factually similar to the instant litigation. There the drawee sued the depository bank on its § 4–207 warranty for a check with a fraudulently raised amount. The depository bank defended by asserting under § 4–406(5) that the plaintiff drawee should have raised a § 3–406 defense against the drawer. But the court held that § 4–406(5) "clearly indicates that it refers to the waiver of the defenses created by § 4–406 and not of the defense based on a customer's negligent drawing of a check created by § 3–406." 15 UCC Rep.Serv. at 693. *See also* H. Bailey, *Brady on Bank Checks* 491 (4th ed. 1969).

Despite the policy problems noted above, this court must concur with the *Mellon Bank* court. Not only is the language of subsection (5) clear, but Comment 7 to that section states:

Although the principle of subsection (5) might well be applied to other types of claims of customers against banks and defenses to these claims, the rule of the subsection is limited to defenses of a pay-

or bank under this section. No present need is known to give the rule wider effect.[7]

This court is further guided by the history of the Code, as was the *Mellon Bank* court, which stated:

In an early official draft of the Code, a similar provision [to § 4–406(5)] was included under § 4–207, the warranty section, and was thus applicable to a waiver of defenses based both on delay in reporting alterations and negligence in preparing checks. Supplement No. 1 [1955] to the 1952 Official Draft of Text and Comments of the Uniform Commercial Code, p. 31. However, in the adopted version of the Code, the provision was moved to § 4–406 and the phrase limiting it to that section was added. No comparable provision was included in § 3–406.

15 UCC Rep.Serv. at 693–94 & n. 2.

These clear indications of the intent of the Code drafters compel a conclusion that Penn Mutual's alleged negligence under § 3–406 does not allow Mount Holly to use § 4–406(5) to preclude Girard's warranty claim. The policy and fairness considerations discussed above cannot override the definite mandate of the statute.[8]

### F. Conclusion

The evidence in the record demonstrates that Mount Holly breached its § 4–207(1)(a)

---

**6.** Mount Holly and Penn Mutual have argued that incorporation of § 3–406 into § 4–406(5) is also advocated by the court in *Life Ins. Co. of Va. v. Snyder,* 141 N.J.Super 539, 358 A.2d 859 (Dist.Ct.1976). The court does not read the *Snyder* case this way.

**7.** Professor Whaley, in his article, points to Comment 6 to § 4–406 to support the incorporation of § 3–406. Whaley, *supra* at 20 n. 74. This court finds nothing in that comment supporting his view.

**8.** The court finds distinguishable a case from this district which was not cited by Mount Holly but does indicate how the § 4–406(5) limitation might be circumvented. In *Tormo v. Yormark,* 14 UCC Rep.Serv. 962 (D.N.J.), not otherwise reported, *appeal dismissed,* No. 74–1961 (3rd Cir. Oct. 23, 1974), Judge Coolahan held that a party which was both drawer and drawee of a draft could not sue the depository

bank on a § 3–417(2) warranty because of the former's bad acts. The drawer-drawee had issued checks to an attorney who represented the intended beneficiary of the funds, although the drawee knew that the attorney, who later forged the indorsement of the beneficiary and absconded with the funds, had been convicted of certain crimes. The drawee's knowledge, the court held, created unclean hands and precluded the drawee's standing as a holder in good faith under the language of § 3–417. Assuming *arguendo* that this interpretation of the Code is valid and could be applied to the good faith term in § 4–207, this case is distinguishable from the present one since there can be no allegation here that Girard acted in bad faith. Even if Girard knew of Penn Mutual's problems with theft of its checks, such knowledge on the part of the drawee does not constitute the type of bad faith presented in *Tormo.*

presentment warranty to Girard. Mount Holly, which has had ample opportunity for discovery,[9] has raised no facts or law presenting a genuine issue for trial. Fed.R. Civ.P. 56(e). Summary judgment will be granted for plaintiff Girard in the amount of the Lefkowitz check, $28,269.54.[10]

## III. Depository Bank's Direct Action against Drawer

Anticipating an adverse ruling on the warranty claim, Mount Holly has sued its transferor, Ms. Payung, and the drawer, Penn Mutual. By the claim against Penn Mutual, Mount Holly again seeks to assert Penn Mutual's purported negligence in order to shift the liability for the forged check.

The claim against Ms. Payung is not at issue here; presumably it will be based on her warranty of good title under § 3–417. That claim may allow Penn Mutual to shift its liability back in the collection chain to Ms. Payung, who may be able to shift the loss to any other prior party. But the court cannot assume that Mount Holly's own warranty claim will be successful; even if held liable, Ms. Payung may not be able to satisfy a judgment. As is noted above, other forged indorsement situations could present facts making it impossible for the depository bank to recover from a prior party, particularly the wrongdoer. Therefore the court must consider this claim against Penn Mutual as possibly Mount Holly's only way of avoiding liability.

### A. Choice of Law

While Mount Holly contends that New Jersey law should also apply to this claim, Penn Mutual asks the court to apply the law of its home state, Pennsylvania. The court assumes *arguendo* that Pennsylvania would *not* allow a depository bank-drawer action.[11] As it is held below that New Jersey *would* allow such a claim, there is a conflict.

To resolve this choice of law problem, the court again turns to U.C.C. § 4–102(2) for guidance. Read literally, the provision requires application of the law of the state where the depository bank is located as it is the only "bank" in its action against the drawer. *Cf. Perini*, 553 F.2d at 416 n.29 (§ 4–102(2) mandates that the drawer-drawee relationship is governed by law of drawee's state), *Life Insurance Co. of Virginia v. Snyder*, 141 N.J.Super. 539, 541, 358 A.2d 859, 860 (Dist.Ct.1976) (§ 4–102(2) required application of law of state of depository bank where it is sued by drawer). Under this reading the term "liability" means the actual loss accruing to the bank if the claim is unsuccessful rather than the legal liability of the defendant in the action. This is somewhat contrary to the construction used above for the drawee-depository bank claim where it is held that "liability" means the depository bank's legal liability as defendant. Nevertheless, the court sees this as the only possible reading of the statute in the depository bank-drawer claim, and feels the result is a prudent one

---

9. On February 6, 1979, the Magistrate ordered all discovery be concluded by June 6.

10. While plaintiff has asked for prejudgment interest, there is no state law supporting an award here, and no interest will be granted.

11. This assumption is supported by older Pennsylvania cases, which are indicative of Pennsylvania law on the issue since, of course, Pennsylvania's version of the Code, 12A Pa.Stat. § 1–101 *et seq.*, also provides no cause of action. The Pennsylvania Supreme Court has held in a pre-Code case that the drawer's negligence, in respect to its employees' acts done after a check is prepared, will not preclude a party which is both drawer and drawee from recovering from a depository bank. *Land Title*

*Bank & Trust Co. v. Cheltenham National Bank*, 362 Pa. 30, 66 A.2d 768, 772 (1949). A much earlier case held that the drawer's negligence was never relevant to the drawee's claim against the depository bank. *Second National Bank v. Guarantee Trust & Safe Deposit Co.*, 206 Pa. 616, 56 A. 72, 73 (1903). From these cases it might appear that the negligence alleged here could not serve as the basis of an action by the depository bank against the drawer. But the court does not reach the substantive issue under Pennsylvania law. It is only assumed that there is a conflict so that the choice of law problem can be resolved and the law on this novel issue need only be determined for New Jersey.

because it insures that all forged indorsement claims involving the depository bank will be governed by the law of its state. Where there is a forged indorsement the depository bank is essentially the central party since it is the one held presumptively liable under the Code scheme.

 The court also believes that while a depository bank-drawer action must be based on common law, as is discussed *infra*, § 4–102(2) of the Code should cover the situation, given its broad language.[12]

 But even if common law choice of law rules are used the result is the same. The conflicts rules for tort actions are applicable since the claim is based on the negligence of Penn Mutual, which was not in privity with Mount Holly. For tort actions the New Jersey Supreme Court has adopted a governmental interest approach. *Rose v. Port of New York Authority*, 61 N.J. 129, 263 A.2d 129 (1972); *Pfau v. Trent Aluminum Co.*, 55 N.J. 511, 263 A.2d 129 (1970); *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967). *Accord, Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 32 (3rd Cir. 1975); *Colley v. Harvey Cedars Marina*, 442 F.Supp. 953, 955 (D.N.J.1976).

 Pennsylvania has an interest in protecting its drawers from liability for negligence not implicated by the Code. New Jersey has an interest in enabling its innocent depository banks to recover when they receive forged checks. A "true" conflict is presented. This court has held that resolution of a "true" conflict can be based on three theories. *Colley*, 422 F.Supp. at 957. One is application of forum law where the forum is an interested jurisdiction. This would dictate that New Jersey law be applied. A second is use of what the court considers the "better rule of law." This would also require New Jersey substantive law, given the court's views expressed below.

Third is the use of Professor David F. Cavers' principles of preference. D. Cavers, *The Choice-of-Law Process* (1965). His first principle is relevant here:

Where the liability laws of the state of injury set a *higher* standard of conduct or of financial protection against injury than do the laws of the state where the person causing the injury has acted or had his home, the laws of the state of injury should determine the standard and the protection applicable to the case, at least where the person injured was not so related to the person causing the injury that the question should be relegated to the law governing their relationship.

*Id.* at 139. This would also prescribe that New Jersey law be applied since it is the state where Mount Holly was injured and which sets a higher standard of conduct and protection.

But perhaps the best method for resolving the "true" conflict would be simply to refer to the statutory choice of law provision § 4–102(2), which, at the least, is applicable by analogy to a common law negligence claim. As indicated above, this statute is construed to require that New Jersey law be applied.

While the court believes the proper solution is to apply § 4–102(2) directly, the result is the same if that statute is used to resolve a "true" conflict under common law choice of law rules or one of the three tests stated in *Colley* are used. Each path leads to the same conclusion, application of New Jersey substantive law.

### B. Existence of a Cause of Action

#### 1. Under § 3–406

 Mount Holly first contends that § 3–406 implicitly creates a cause of action against the drawer. Reliance on this section is misplaced. Mount Holly is not a

---

**12.** The only other choice of law provision in the Code that could conceivably apply is the general provision, § 1–105, which governs if § 4–102 does not. *See* § 1–105(2). Subsection (1) of § 1–105 states in pertinent part that the Code "applies to transactions bearing an appropriate relation to this state." This section appears to govern only liability created by other Code sections. Furthermore, the appropriate relation reference gives almost no guidance, and would in this case simply direct the court to common law rules. *See* Official Comment 3.

drawee, payor or holder in due course. *See* White & Summers, *supra* at 541–42 n.42. Furthermore, Comment 5 to § 3–406 states: "This section does not make the negligent party liable in tort for damages resulting from the alteration." In the *Mellon Bank* case, cited above, the depository bank also attempted to bring a third-party claim based on § 3–406 against the allegedly negligent drawer, but the court dismissed the claim for the same reasons stated here. A similar view is expressed in Whaley, *supra* at 21.

### 2. Under Common Law

█ While it is clear that no provision of the Code provides a cause of action by the depository bank against the drawer for its negligence, this omission cannot be read as an intent by the legislature to preclude such an action based on common law principles. Indeed, § 1–103 of the Code provides:

> 1–103. Supplementary General Principles of Law Applicable.
>
> Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

█ The New Jersey Supreme Court has indicated its general policy in construing statutes:

> In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law.

*New Jersey Builders, Owners and Managers Association v. Blair*, 60 N.J. 330, 338, 288 A.2d 855, 859 (1972).

█ Here a cause of action would further the Code policy favoring deterrence of the actor best able to prevent the fraud.

Courts should be hesitant to improvise new remedies outside the already intricate scheme of Articles 3 and 4. However, this new cause of action would not interfere with that scheme but extend its principles to a situation not specifically foreseen by the drafters. The Code cannot be read to preclude a common law action.

Plaintiff asserts that such an action should be based on ordinary negligence principles, as it alleges Penn Mutual's unreasonable failure to supervise its employees and check processing procedures has now resulted in an injury to Mount Holly. The New Jersey courts have never published an opinion discussing this type of claim, so the case must be approached as one of first impression.

The one recent case in another jurisdiction deciding whether there is a common law cause of action by a depository bank against a drawer is the *Mellon Bank* decision. There the depository bank also asserted a claim against the drawer based on common law, but the court held that such a claim would not be recognized. The judge relied on two pre-Code New York state court opinions, one of which had been affirmed by the Court of Appeals. 15 UCC Rep.Serv. at 695.

A closely analogous situation is where a drawer attempts to sue a depository bank, another claim not specifically provided for in the Code. The courts have disagreed on this issue. Courts finding there can be no common law-based action have also relied on pre-Code decisions barring such claims. *See Central Cadillac, Inc. v. Stern Haskell, Inc.*, 356 F.Supp. 1280, 1283 (S.D.N.Y.1972); *Life Insurance Co. of Virginia v. Snyder*, 141 N.J.Super. 539, 542, 545, 358 A.2d 859, 861–62 (Dist.Ct.1976). These courts have also indicated that such a claim would circumvent the §§ 3–406 and 4–406 defenses by the drawee against the drawer. *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358, 363 (1962); *Western Union Telegraph Corp. v. Peoples National Bank in Lakewood*, 169 N.J.Super. 272, at 277–280,

404 A.2d 1178, at 1181–1182 (N.J.Super., App.Div. 1979); *Snyder*, 141 N.J.Super. at 544, 358 A.2d at 861–62.

Unlike in these cases and in the *Mellon Bank* case, here no New Jersey pre-Code case covers the situation. Also, allowance of a cause of action would not circumvent any Code defenses; rather it would allow a defense based on § 3–406 which could not otherwise be raised because of the actions of the drawee.

A recent decision by the New York Court of Appeals allowing a drawer-depository bank suit stressed the need to shift liability to the negligent party. The court stated:

> It is basic to the law of commercial paper that as between innocent parties any loss should ultimately be placed on the party which could most easily have prevented that loss.

*Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank*, 46 N.Y.2d 459, 386 N.E.2d 1319, 1323, 414 N.Y.S.2d 298, 302 (1979).

Here, too, a negligence action could allow the loss to be shifted to the party which was in the best position to have prevented the forgery. Such a policy is implicit in §§ 3–405, 3–406 and 4–406. While this situation is not encompassed by § 3–405 and subsections (1) and (4) of § 4–406, it is within the ambit of § 3–406. However, because of the rigid limitation written into § 4–406(5), the policy behind § 3–406 can be thwarted when the drawee decides not to sue its negligent customer.

Creation of a cause of action by the depository bank against the drawer would bridge this gap in the Code provisions, and allow relevant deterrence and compensatory policies, indorsed by the legislature through enactment of the Code, to reach this situation. The court therefore concludes that if the New Jersey Supreme Court were faced with the issue, it would, to paraphrase the *Blair* case, look to the "essential purpose and design," of the Code and create an interstitial cause of action for negligence by the depository bank against the drawer. Accordingly, the court holds that the law of New Jersey recognizes Mount Holly's claim against Penn Mutual.

**C. Parameters of the Cause of Action**

As this action, though based on common law negligence, is a creature of the policies implicit in the Code, its shape should also derive from those policies. Since this action is designed to bridge a gap in the Code provisions, it should not extend to situations which the Code directly addresses. In accordance with these two principles, the holding here is limited in the following ways.

First, the depository bank may not sue the drawer directly for the types of negligence that are covered by subsections (1) and (4) of § 4–406; those types of negligence may only be addressed by the depository bank asserting an estoppel against the drawee bank under subsection (5).[13] The only types of negligence that are cognizable under the new action are those otherwise covered by § 3–406 where the drawer sues the drawee. The negligence must substantially contribute to the forgery. *See Gast v. American Casualty Co. of Reading, Pa.*, 99 N.J.Super. 538, 542–44, 240 A.2d 682, 684–86 (App.Div.1968); *Whaley, supra* at 22–24, 34–38. Certainly this would cover the alleged failure of Penn Mutual to adequately supervise those employees having access to prepared checks. Whether it would also cover any delay by Penn Mutual in reporting the forgery where such a delay allowed a wrongdoer to withdraw funds need not be reached here since it is not clear if Mount Holly has charged that Penn Mutual was so negligent. Neither does the court rule on whether this cause of action extends to situations involving forged drawer's signatures or material alterations.

**13.** Where the drawer's negligent conduct under § 3–405 is involved the drawer will be liable regardless of the claims between parties since the section renders the indorsement effective precluding the drawer's claim against the drawee and the drawee's warranty claim against the depository bank. Since the depository bank cannot be held liable in this case, the bank would never need to raise § 3–405 conduct in a common law negligence action.

This cause of action would not be appropriate until the depository bank is adjudged or has admitted liability on a presentment warranty. Of course, such a judgment has been entered here. The court also believes a second prerequisite is appropriate to the special facts of this case. Since Mount Holly's prior transferror, Ms. Payung, has been sued by Mount Holly and has appeared in this court, and since she is charged with forging the Lefkowitz indorsement, the court believes that the claim against her should be tried before the claim against Penn Mutual. The first priority of the law should be to shift liability to the forger where that is possible. Therefore Mount Holly's claim against Penn Mutual is stayed pending a final disposition of its claim against Ms. Payung. If, after a good faith attempt to litigate the claim and collect a judgment, recovery is insufficient, then the stay of the claim against Penn Mutual will be lifted and the action will proceed to trial. If full recovery is had from Ms. Payung, the claim against Penn Mutual will be barred.[14]

Finally, if the claim against the drawer is allowed to proceed, the drawer may raise the depository bank's own negligence in accepting the check as a defense barring the bank's recovery. Use of contributory negligence here parallels the requirement in § 3–406 that a drawee must act in accordance with reasonable commercial standards, and the restriction in § 3–419(3) that the depository bank which acts in accordance with such standards cannot be sued for conversion. See Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 493–94, 246 A.2d 162, 167–68 (Law Div. 1968), aff'd 105 N.J.Super. 164, 251 A.2d 460 (App.Div.1969). This also parallels subsection (3) of § 4–406, which bars a drawee from raising the drawer's subsection (1) negligence where the drawee failed to use ordinary care in paying the item.[15]

The court finds support for inclusion of a contributory negligence defense from the fact that the outcome of litigation is similar under Code provisions governing the drawer-drawee suit. In that type of claim, the drawer will win where both drawer and drawee are negligent—just as a contributory negligence defense will absolve the negligent drawer in the cause of action here by the depository bank.

Another parallel is to the New Jersey Appellate Division's recent use of the "last clear chance" doctrine to dismiss a common law negligence claim by a drawer against a depository bank where the drawee bank had the opportunity to prevent an erroneous

---

14. If Ms. Payung took the check from the forger, as she alleges, then she can attempt to sue that party if she is found liable. She might also attempt to pursue a common law negligence claim against the drawer, although the court does not now reach the question of whether such a transferor may sue the drawer.

15. Some of the cases allowing a drawer to sue a depository bank have indicated that §§ 3–406 and 4–406 could be used as defenses by the bank to the drawer's claim, which has been held to be based on absolute liability doctrines of direct warranty, third-party beneficiary of a warranty and money had and received. See Prudential Ins. Co. v. Atlas Supply Co., 55 F.R.D. 436, 438 (E.D.Wis.1972); Sun 'n Sand, Inc. v. United Cal. Bank, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 929 (1978) (also allowing direct negligence action in special situation); Allied Concord Financial Corp. v. Bank of America National Trust & Savings Ass'n, 235 Cal.App.2d 1, 80 Cal.Rptr. 622, 625 (1969); Commercial Credit Corp. v. Citizens Nat'l Bank, 150 W.Va. 196, 144 S.E.2d 784, 790 (1965). See also Int'l Industries, Inc. v. Island State Bank, 348 F.Supp. 886 (S.D.Tex.1971); Ins. Co. of N. Am. v. Atlas Supply Co., 121 Ga.App. 1, 172 S.E.2d 632 (1970) (also allowing drawer-depository bank action). The cause of action created here uses § 3–406 as the basis of the bank's negligence claim against the drawer; where the law also permits the drawer to sue the bank and further allows the bank to raise § 3–406 drawer negligence as a defense against the drawer's absolute liability claim, then the outcome should be the same regardless of which party is plaintiff. However, no court has yet spoken on how the reasonable commercial standards and ordinary care provisions of § 3–406 and § 4–406(3) would affect an action by the drawer. Two published New Jersey decisions considering whether a drawer could sue a depository bank in particular situations rejected the claims. Western Union Tel. Co. v. Peoples Nat'l Bank in Lakewood, 169 N.J.Super. 272, 404 A.2d 1178, (N.J.Super., App.Div. 1979); Life Ins. Co. of Va. v. Snyder, 141 N.J. Super. 539, 358 A.2d 859 (Dist.Ct. 1976).

overpayment on a check. *Western Union Telegraph Co. v. Peoples National Bank in Lakewood*, 169 N.J.Super. 272, 276–278, 404 A.2d 1178, 1180–1181 (N.J.Super., App.Div. 1979). In the instant case it might be found that Mount Holly had the last opportunity to prevent the forgery by not accepting or crediting the check.

■ However, the parallel to other situations is not perfect. Where both the depository bank and the drawer are negligent, but the drawee is not, the outcome will still depend on whether the drawee raises the drawer's negligence and fails to credit its customer. If the drawee successfully does this, it will not need to sue the depository bank and that bank's negligence will not create liability. But, as was noted above, the drawee will often fail to dispute its customer's claim, preferring to sue the depository or collecting bank where there is no § 4–406(5) estoppel. The new cause of action created here is, of course, designed to alleviate this gap in the Code. However, if a contributory negligence defense can be asserted against a direct negligence claim, then the depository bank's own negligence will put the loss on the bank, and its liability will still have been caused by the drawee's failure to raise its customer's negligence.

■ Yet another factor should be noted in connection with the instance where both drawer and depository bank are negligent. Where the drawee successfully asserts the drawer's negligence, the liability may still be shifted to the depository bank if the jurisdiction allows the drawer to then sue the depository bank directly but does not allow the depository bank to raise a § 3–406 drawer negligence defense to the claim. In that jurisdiction it would thus not matter whether the drawee chose to assert drawer negligence since the liability would eventually fall on the depository bank regardless, and the outcome would also not differ where the depository bank is barred from

its own claim because of its own negligence. In addition, even where the depository bank has a § 3–406 defense to the drawer's claim, where both parties are negligent the bank would still be liable as a result of a drawer's action if the drawer can preclude the bank's § 3–406 defense by asserting the bank's failure to adhere to reasonable commercial standards. *See* footnote 15, *supra.*

All this would place the liability on the depository bank where both it and the drawer are negligent, as allowance of a contributory negligence defense in the cause of action in the instant case will do. The court approves this outcome since it believes deterrence of the parties taking from forgers is a higher priority than deterrence of negligent drawers. A better solution might be a comparative negligence system, but this court will leave such a radical step to the New Jersey legislature or supreme court.[16] This limited negligence cause of action may alter the result in only a few situations, but the court feels the sound principles behind various Code provisions will be served by allowing such a claim by the depository bank against the drawer.

### D. Conclusion

Third-party defendant Penn Mutual has supported its summary judgment motion solely with the legal argument that there can be no claim by third-party plaintiff Mount Holly against it. Since the court holds that Mount Holly may base an action on common law negligence, Penn Mutual's summary judgment motion is denied. For the reason indicated, this claim is stayed pending disposition of Mount Holly's claim against Darlene Payung.

---

**16.** The California Supreme Court has indicated in a brief dictum that comparative negligence may be used for § 4–406 defenses in actions by the drawer against the depository bank.

*Sun 'n Sand, Inc. v. United Cal. Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 939 (1978). *See also* 582 P.2d at 945 n.4 (Clark, J., concurring and dissenting).